Sealed
Public and unofficial staff access to this instrument are prohibited by court order

United States Courts
Southern District of Texas
FILED
*October 22, 2020*
David J. Bradley, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | CRIMINAL NO. **4:20cr525** |
| | § | |
| **ARAEL DOOLITTLE** | § | |

**INDICTMENT**

THE GRAND JURY CHARGES:

**COUNTS 1-8**
**(Wire Fraud-Title 18, U.S.C. § 1343)**

At all times material to this Indictment:

**I. Introduction**

1. Arael DOOLITTLE was a Managing Member of Sariel Petroleum LLC ("SPL") and Sariel Enterprises LLC ("SEL"). SPL was formed in Wyoming in February 2014. SEL was formed in Texas on December 1, 2017. Both entities were headquartered in Houston, Texas and engaged in and attempted to engage in purchase and sale transactions of refined petroleum products in an effort to make a profit on the margin between the purchase and sale price of each transaction.

2. Arael DOOLITTLE's associate, A.D. was a Texas realtor and real estate broker who worked in conjunction with Arael DOOLITTLE to secure physical trading transactions in petroleum products. A.D. posed as a distillates trader for the multinational energy corporation "Chevron". A.D. established a bank account in the name Chevron USA Products, without permission from Chevron Corporation or any of its subsidiaries (hereinafter "Chevron"), for the purpose of receiving and transferring funds acquired through misrepresentations to customers and investors that the funds were to be used for the purchase of Chevron refined products.

3. Dominion Resources Trading, Inc. ("DRT") was established in Nevada in 2015. In 2017, DOOLITTLE proposed that DRT invest with or work work with SPL to secure investors to invest in oil and gas transactions DOOLITTLE was working on. DRT advised potential investors of the trade financing opportunities with SPL. In November 2017, $1,250,000 in investor funds were provided to SPL through DRT from 21 investors who relied upon representations made by DOOLITTLE concerning the use, handling and return of these funds. DOOLITTLE provided falsified documents to DRT and investors which made it appear as if legitimate transactions were taking place with the investor's funds, including that $1,209,600 of the $1,250,000 investment had been wire transferred to Citgo for the purchase of product.

## II. THE SCHEME TO DEFRAUD

4. From in or about February 2017 and continuing through on or about February 26, 2020, in the Southern District of Texas and elsewhere, the defendant,

**ARAEL DOOLITTLE,**

along with others known and unknown to the grand jury, knowingly devised and intended to devise a scheme to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises.

### A. MANNER AND MEANS OF THE SCHEME

It was part of the scheme that:

5. Arael DOOLITTLE represented to potential customers and investors that SPL and SEL had the necessary pre-existing relationships with refining companies such as Chevron and Citgo to purchase specific petroleum products for resale to their customers.

6. Arael DOOLITTLE represented to SPL and SEL customers and investors that their funds for a purchase transaction would go into a "lockbox" bank account belonging to Chevron in

order to secure petroleum product.

7. Although he had no association with or authorization from Chevron, Arael DOOLITTLE'S associate, A.D. opened a bank account under the name Chevron USA Products which was used by Arael DOOLITTLE to further the deception that customer and investor transaction funds were sent to the Chevron lockbox.

8. Arael DOOLITTLE manufactured and disseminated to customers fraudulent letters on what appeared to be Chevron letterhead.

9. Arael DOOLITTLE had his associate, A.D., establish an email account which was designed to mislead those viewing emails generated from this account that the account was associated with Chevron.

10. Arael DOOLITTLE used the services of an attorney to provide attestation letters to potential customers and investors to provide comfort as to the legitimacy of the proposed transaction.

11. Arael DOOLITTLE used a banker to provide assurances to investors and potential customers regarding SPL's business relationships and finances.

12. Arael DOOLITTLE diverted and misappropriated customer and investor funds.

## B. Acts in Furtherance of the Scheme

13. In furtherance of the scheme to defraud and to effect the objects thereof, Arael DOOLITTLE performed or caused the performance of one or more of the following acts, among others not described herein, in the Southern District of Texas and elsewhere on or about the following dates:

14. February 25, 2017, Arael DOOLITTLE outlined a trade financing opportunity to R.M. of Dominion Resources and Trading, Inc. (DRT) in which funds supplied through DRT would be

used to initiate Petroleum Supply Agreements by funding for spot lifts of petroleum product and then Standby Letters of Credit would be put into place to continue the Product Supply Agreements for the remainder of at least one year at which time funds would be returned.

15. September 29, 2017, Arael DOOLITTLE caused A.D. to file an Assumed Name record for Chevron USA Products in the records of the Harris County Clerk.

16. September 29, 2017, Arael DOOLITTLE caused A.D. to open Wells Fargo Bank account xxxx4198 in the name of Chevron USA Products.

17. October 4, 2017, Arael DOOLITTLE caused A.D. to acquire a domain registration for chevronus.com.

18. November 20, 2017, Arael DOOLITTLE sent a text message to investor R.K., stating his banker "Andrew can confirm that wires have gone to Chevron".

19. November 21, 2017, Arael DOOLITTLE as Director, Managing Member of SPL, signed a Profit Sharing Agreement with DRT.

20. November 24, 2017, Arael DOOLITTLE caused DRT to wire transfer $1,250,000 in investor funds to BBVA Compass Bank account xxx1550 held in the name of SPL.

21. November 25, 2017, Arael DOOLITTLE caused his lawyer, J.O., to prepare and sign a letter confirming that Sariel Petroleum, LLC had a representative account with Chevron Products Company through a lock box arrangement with Chase Bank.

22. November 26, 2017, Arael DOOLITTLE emailed to investor R.K. an Attestation Letter from DOOLITTLE's attorney, J.O., confirming that Sariel Petroleum LLC had a representative account with Chevron Products Company via a lock box arrangement with Chase Bank.

23. November 27, 2017, Arael DOOLITTLE wire transferred $1,209,600 of DRT investor funds from Sariel Petroleum LLC bank account XXX1550 at BBVA Compass Bank to the Chevron USA Products account XXX4198 at Wells Fargo Bank.

24. December 4, 2017, Arael DOOLITTLE falsely told R.M. of DRT that funds provided by DRT to Sariel Petroleum LLC's bank account xxx1550 were transferred to Chevron's account and then to a Shell Oil Company account where they were used for spot transaction of diesel fuel sold to Predator Renewable Energy.

25. February 12, 2018, Arael DOOLITTLE falsely told DRT that Predator Capital Partners had wire transferred funds to complete the first Spot Lift of Transmix.

26. February 15 2018, Arael DOOLITTLE emailed investor R.K. and R.M. of DRT, forwarding a fraudulent email allegedly sent from Citgo employee Rlouveie@citgo.com which purported to be a receipt for $1,209,600 from Citgo.

27. March 16, 2018, Arael DOOLITTLE emailed investor R.K a fabricated Term Fuel Oil Purchase and Sale Agreement purportedly between SPL and Predator Renew Energy.

28. March 16, 2018, Arael DOOLITTLE emailed R.M. of DRT a fabricated commercial invoice purportedly between SEL and Predator Capital Partners.

29. March 26, 2018, Arael DOOLITTLE falsely told DRT that Transmix Lift 1 had been completed.

30. March 27, 2018, Arael DOOLITTLE caused investor R.K. to wire transfer $225,000 to Sariel Petroleum, LLC BBVA Compass Bank account xxx4422 which DOOLITTLE represented would be used for the sole use of a Load Code transaction for 40 trucks, each carrying an average of 75,000 gallons of fuel.

31. April 10, 2018, Arael DOOLITTE falsely told investor R.K. that he had initiated a transfer of $1,388,211 from his account xxx0880 at BBVA Compass to the SPL and DRT joint account at BBVA Compass Bank, account xxx1550 sending R.K. two screen shots by text message which purport to show a transfer of $1,388,211.00 and an available balance in SPL account xxx0880 of $4,500,000.00.

32. April 11, 2018, Arael DOOLITTLE caused a letter to be provided to investor R.K. on BBVA Compass letterhead falsely stating that a wire transfer in the amount of $1,388,211.00 was pending deposit into SPL and DRT joint account xxx1550 at BBVA Compass, and which should be completed no later than April 13, 2018.

33. April 13, 2018, Arael DOOLITTLE falsely told DRT that BBVA Compass misplaced the $1,388,211 deposit intended for the joint SPL/DRT BBVA Compass account xxx1550.

34. April 23, 2018, Arael DOOLITTLE falsely told investor R.K. that he instructed his investment advisor at Bank of America Merril Lynch to sell securities in the amount of approximately $1,511,210 to cover the missing $1,388,211.

35. April 27, 2018, Arael DOOLITTLE emailed investor R.K. a fabricated invoice between Sariel Enterprises, LLC. And Predator Capital Partners which falsely represented that Predator Capital Partners was purchasing $4,856,866 worth of fuel product from Sariel Enterprises, LLC.

36. May 5, 2018, Arael DOOLITTLE sent a text message to investor R.K. which included a photograph of a deposit slip which falsely represented that $1,511,200 was deposited into Sariel Enterprises, LLC account xxx5803 at JPMorgan Chase Bank.

37. July 17, 2018, Arael DOOLITTLE sent an email to investor R.K. falsely representing that he had received a cashier's check from BBVA Compass Bank for $14,200,000 and that he would wire transfer $345,000 to R.K. the next day.

### C. The Execution of the Scheme

38. On or about the dates listed below, in the Southern District of Texas and elsewhere, for the purpose of executing the above-described scheme to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, and attempting to do so, the defendant,

**ARAEL DOOLITTLE,**

knowingly caused to be transmitted by means of wire communications in and affecting interstate commerce, the following writings, signals and sounds:

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| 1 | 11/26/2017 | Email from Arael Doolittle to investor R.K. forwarding an attestation letter from Doolittle's attorney confirming Sariel Petroleum LLC had a representative account with Chevron Products Company. |
| 2 | 11/27/2017 | Wire transfer of $609,600.00 from Sariel Petroleum account xxxx1550 at BBVA Compass to Chevron USA Products account xxx4198 at Wells Fargo Bank. |
| 3 | 11/27/2017 | Wire transfer of $600,000.00 from Sariel Petroleum account xxxx1550 at BBVA Compass to Chevron USA Products account xxx4198 at Wells Fargo Bank. |
| 4 | 2/15/2018 | Email from Arael Doolittle to R.M. of DRT and investor R.K. forwarding a fake email from Citgo. |
| 5 | 3/16/2018 | Email from Arael Doolittle to investor R.K. attaching a fabricated Product and Sale Agreement between Sariel Petroleum, LLC and Predator Renew Energy. |
| 6 | 3/16/2018 | Email from Arael Doolittle to R.M. of DRT attaching a fabricated commercial invoice between Sariel Enterprises, LLC and Predator Capital Partners. |
| 7 | 3/27/2018 | Wire transfer of $225,000 into Sariel Petroleum, LLC BBVA Compass Bank account xxx4422 |
| 8 | 4/10/2018 | Text message from Arael Doolittle to investor R.K. of screen shots of purported bank transfer. |

All in Violation of Title 18, United States Code, Section 1343.

## COUNTS NINE THROUGH TWELVE
### (Money Laundering-Title 18, U.S.C. § 1957)

39. The allegations contained in paragraphs 1 through 37 of this Indictment are hereby repeated, realleged, and incorporated by reference as though fully set forth herein.

40. On or about the following dates in the Southern District of Texas and elsewhere, the defendant,

**ARAEL DOOLITTLE,**

did knowingly cause and engage in, and attempt to cause and engage in, monetary transactions affecting interstate commerce in criminally derived property of a value greater than $10,000, such funds having been derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343.

| COUNT | DATE | TRANSACTION |
|---|---|---|
| 9 | 11/27/2017 | Wire transfer of $609,600 from Sariel Petroleum LLC's BBVA Compass account xxx1550 to Wells Fargo Bank account xxx4198 held in the name Chevron USA Products. |
| 10 | 11/27/2017 | Wire transfer of $600,000 from Sariel Petroleum LLC's BBVA Compass account xxx1550 to Wells Fargo Bank account xxx4198 held in the name Chevron USA Products. |
| 11 | 3/27/2018 | Transfer of $225,000 from Sariel Petroleum, LLC BBVA Compass account xxxx4422 to Arael Doolittle's personal BBVA Compass account xxx1396. |
| 12 | 3/28/2018 | Transfer of $159,706.05 from Arael Doolittle's personal BBVA Compass account xxx1396 to Sariel Petroleum LLC BBVA Compass account xxx1550. |

All in violation of Title 18, United States Code, Section 1957.

## NOTICE OF CRIMINAL FORFEITURE
18 U.S.C. §981(a)(1)(C); 28 U.S.C. §2461(c)

Pursuant to Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to the Defendant Arael Doolittle that in the event of conviction of an offense charged in Counts 1 through 8 of this Indictment the United States will seek forfeiture of all property, real

8

or personal, which constitutes or is derived from proceeds traceable to such offenses.

The property subject to forfeiture is approximately $1,246,978.95.

## NOTICE OF CRIMINAL FORFEITURE
18 U.S.C. §982(a)(1)

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to Defendant Arael Doolittle that upon conviction of any of the money laundering offenses charged in Counts 9 through 12 of this Indictment, all property, real or personal, involved in money laundering offenses or traceable to such property, is subject to forfeiture.

### Money Judgment and Substitute Assets

The United States gives notice that it will seek a money judgment against Defendant Arael Doolittle. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of Defendant Arael Doolittle up to the amount of the money judgment.

A TRUE BILL:

**Original Signature on File**

_____
FOREPERSON OF THE GRAND JURY


RYAN K. PATRICK
UNITED STATES ATTORNEY

By:

Melissa J. Annis
Assistant United States Attorney

9