United States District Court
Southern District of Texas
**ENTERED**
December 01, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT
OF TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| United States of America, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | Case No. 4:20-cr-525 |
| | § | |
| Arael Doolittle, | § | |
| | § | |
| *Defendant*. | § | |

### ORDER REVOKING BOND

On December 1, 2020, the court held a hearing on the government's motion to revoke the order releasing Defendant Arael Doolittle to pretrial supervision. ECF No. 16. Because the court finds that Defendant is not likely to abide by the court's conditions the motion is GRANTED.

The court released Defendant on bond on October 29, 2020. ECF Nos. 9, 10. The Government moved to revoke his bond on the basis that he violated his conditions of release, specifically that he failed to notify Pretrial Services ("PTS") in writing before changing his address.

At the hearing on December 1, 2020, the case agent, a Special Agent with the FBI, and two and two Special Agents with the United States Secret Service testified about Defendant's whereabouts immediately before and after he was released on bond. All three have been involved in the investigation of either this case, or another felony case pending against Defendant, 4:20-cr-621. The

witnesses testified based on cell phone records, including current and historical location data, as well as conversations with Defendant, his wife, and his business partner.

The case agent testified that, on October 28, 2020, he had an arrest warrant and attempted to arrest Defendant at Defendant's home. He was not home, and Defendant's wife informed the agent that she thought he was in South Texas near the border. His family and the case agent attempted to call Defendant for several hours, but he did not answer his phone. The case agent contacted Defendant's lawyer, who said he would have Defendant call. When Defendant failed to call, the case agent called him again and he answered. Defendant represented that he was in South Texas. The case agent arranged for Defendant to turn himself in the next morning, which Defendant did. However, the evidence established later, upon obtaining Defendant's cell phone record and location data, that Defendant was not in South Texas as he represented to the case agent. Instead, he was in Galveston, Texas. Thus, the evidence established that Defendant lied about where he was to the FBI before his arrest.

After he turned himself in, Defendant was arrested and appeared in court for his initial appearance with retained counsel. Defendant represented to PTS at the time of his interview that he would return to the marital home with his wife of 35 years. The Government agreed to his release on bond. His wife was

designated as his surety on the bond. As a condition of his bond, Defendant was to notify Pretrial Services or the court in writing in advance of any change in his address. ECF No. 10 at 1. During the hearing, Defendant was instructed that he was to live at the marital home and could not change his address without informing PTS in advance. The court admonished Defendant of the consequences of failing to abide by the conditions of release. One of those consequences was that his release could be revoked pending trial. Defendant said he understood. Later that day, his wife appeared at the courthouse and signed the bond as his surety, after which Defendant was released.

The evidence established that upon leaving the courthouse on October 29, Defendant did not return to his marital home. Instead, for the next month he was living in hotels in Galveston, Texas. At first, he lived for several weeks at the San Luis Hotel in a condo. In the interim, Defendant was in contact with his PTS officer who appeared at the hearing. She informed the court that Defendant told her that he and his wife had some problems, and he was with a friend in Galveston. He did not inform PTS that he had not returned to the home. In fact, PTS reviewed the terms of the bond with Defendant, including the requirement that he live at his marital home and that he could not change his address without informing PTS in writing. He confirmed the address and confirmed that he lived there with his wife and two adult children. He said he understood the terms of his

release. Defendant arranged for a virtual home visit with his PTS officer so that she could inspect the home. Eventually, the home tour was arranged for November 20, 2020.

The Secret Service special agent went to Defendants home in early November and learned from his wife that he was not home. His wife admitted that their relationship was fractured, but she had not yet divorced him. Based on phone records, the Secret Service learned that Defendant was living at the San Luis hotel. Based on interviews with hotel staff, they learned that Defendant was living in a condo, rented under the name of Jose Martinez and paid for by a credit card in Martinez's name. His car was in the valet lot. He had been living there for several weeks. The hotel staff reported that there was heavy foot traffic in and out of the condo. The Secret Service obtained a warrant for the hotel condo in the other case. On November 13, 2020, they executed the search warrant and found Defendant, Eric Lafowl, who said he was Defendant's business partner, and a woman named Marue Bellow, who was Martinez's wife and Lafowl's companion. After the search warrant was executed, Defendant and his companions left the San Luis and moved to another hotel in Galveston, where Defendant apparently remained until his arrest on November 20, 2020.

The Secret Service had obtained and arrest warrant and attempted to execute it at Defendant's home based on information that he would be there for a

virtual home visit with PTS on November 20, at 1:00. The Secret Service arrived at Defendant's home at that time, but no one was home. Defendant drove up to the front of the house about an hour later with Lafowl. Defendant was arrested. Lafowl told the Secret Service that they had driven in from Galveston for the home tour with PTS. Lafowl called the PTS officer to inform her that Defendant had been arrested and could not go forward with the tour.

At the hearing, Defendant's wife claimed she did not understand the terms of the bond that Defendant was required to live at the house. She claims that no one explained it to her when she signed the bond, however, that would be inconsistent with usual protocol of the court's staff and the court finds this statement is not credible. Defendant also claimed to have misunderstood that he had to live at his home. The court also finds this is not credible given the court's admonition at the bond hearing and PTS's review of the bond conditions with Defendant and his acknowledgement that he understood. Further, he arranged a home tour for the very purpose of convincing PTS that he lived at home and it was suitable.

Revocation of supervised release is governed by 18 U.S.C. § 3148. Pursuant to 18 U.S.C. § 3148(b)(1)(B), the court finds by clear and convincing evidence that Defendant has violated the terms of his pretrial release. Due to his failure to ever return to the marital home to live as represented at the time of his release, his wife's, who is the surety, lack of knowledge of Defendant's whereabouts or

activities, his living in a hotel under another person's name and credit card, his failure to report to pretrial services that he was in fact living in Galveston, for arranging a home virtual tour with his PTS officer in an effort to mislead her into believing that he was living in the home, and his moving from one hotel to another after the Secret Service executed a search warrant at the San Luis, the court finds, pursuant to 18 U.S.C. § 3148(b)(2)(B), that Defendant is unlikely to abide by any condition or combination of conditions of release. Therefore, Defendant's bond is revoked, and he is ordered detained pending sentencing in this matter.

Signed on December 1, 2020, at Houston, Texas.

_____
Dena Hanovice Palermo
United States Magistrate Judge